1
2
3
4
5
6
7
8
9
10

# Filed

APR 1 0 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD WILLIAMS, | No. C 10-2715 RMW (PR) |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ROBIN RODRIGUEZ, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983.[1] He alleges that defendants Nurse Practitioner Robin Rodriguez, Dr. Darrin Bright, and Dr. Sepulveda were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. Defendants move to dismiss plaintiff's complaint in part for failure to exhaust. Defendants also move for summary judgment, arguing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Plaintiff has opposed the motions, and defendants have filed a reply. Subsequently, plaintiff filed a "motion to show newly conclusive evidence," which the court construes as a supplemental

---

[1] Plaintiff's amended complaint merely substituted former defendant Dr. Mumtaz with defendant Dr. DiStante. In a previous order, the court granted Dr. DiStante's motion for summary judgment. For purposes of this order, the court will refer and cite only to plaintiff's original complaint, in which he details his claims and supporting facts, rather than to his amended complaint.

Order Denying Defendants' Motion to Dismiss; Granting Defendants' Motion for Summary Judgment
P:\pro-se\sj.rmw\cr.10\Williams715mtdmsj

1  opposition. (Docket No. 82.) Defendants have filed their response to plaintiff's most recent

2  supplemental opposition. (Docket No. 83.) Having carefully considered the papers submitted,

3  the court hereby DENIES defendants' motion to dismiss, and GRANTS defendants' motion for

4  summary judgment, for the reasons set out below.

5  **DISCUSSION**

6  In his federal complaint, plaintiff alleges (1) Nurse Practitioner Rodriguez knew that he

7  had H. Pylori but failed to take reasonable steps to manage or treat it; (2) Dr. Sepulveda refused

8  to approve plaintiff for surgery in June 2009, even after receiving notice that it was

9  recommended; (3) Drs. Sepulveda and Bright denied his request for a kosher diet, even after it

10  was recommended; and (4) Dr. Bright cancelled a prescription order for plaintiff to receive

11  morphine for his pain.

12  Defendants argue that (1) Claims 3 and 4 are unexhausted; (2) Dr. Sepulveda is not

13  subject to liability based on his official capacity; (3) they are entitled to summary judgment; (4)

14  they are entitled to qualified immunity. The court addresses these arguments in turn.

15  A.     Motion to Dismiss

16         1.     Standard of Review

17  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

18  with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

19  prisoner confined in any jail, prison, or other correctional facility until such administrative

20  remedies as are available are exhausted." 28 U.S.C. § 1997e(a). Nonexhaustion under

21  § 1997e(a) is an affirmative defense; that is, defendants have the burden of raising and proving

22  the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding

23  a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the

24  pleadings and decide disputed issues of fact. Id. at 1119-20. If the court concludes that the

25  prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without

26  prejudice. Id. at 1120.

27  The State of California provides its prisoners and parolees the right to appeal

28  administratively "any policy, decision, action, condition, or omission by the department or its

1  staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or

2  her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust

3  available administrative remedies within this system, a prisoner must proceed through several

4  levels of appeal: (1) informal review, (2) first formal written appeal on a CDC 602 inmate appeal

5  form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the

6  Director of the California Department of Corrections and Rehabilitation ("Director").  See Barry

7  v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).

8  A final decision from the Director's level of review satisfies the exhaustion requirement under

9  Section 1997e(a). See Barry, 985 F. Supp. at 1237-38.

10      Defendants have the burden of raising and proving the absence of exhaustion, and

11  inmates are not required to specifically plead or demonstrate exhaustion in their complaints.

12  Jones v. Bock, 549 U.S. 199, 215-17 (2007).  As there can be no absence of exhaustion unless

13  some relief remains available, a movant claiming lack of exhaustion must demonstrate that

14  pertinent relief remained available, whether at unexhausted levels or through awaiting the results

15  of the relief already granted as a result of that process.  Brown v. Valoff, 422 F.3d 926, 936-37

16  (9th Cir.  2005).

17      2.      Analysis

18      Defendants argue that plaintiff failed to exhaust his administrative remedies against Drs.

19  Bright and Sepulveda. Plaintiff asserts that his appeal – SVSP 09-12299 – exhausted all of his

20  claims.  (Compl. at 2.) In his initial grievance, plaintiff asserted that the medical department had

21  misdiagnosed his stomach ulcer and cancer for four years, and failed to act quickly to treat it.

22  (Decl. Alvarez, Ex. V at 56.)  Plaintiff requested immediate surgery, as well as compensation for

23  his pain and suffering.  (Id.)  In his appeal to the first level of review, plaintiff claimed that he

24  was still suffering, and that his dietary needs were not being addressed.  (Id.)  In his second level

25  of review, plaintiff continued to allege that he was suffering from the misdiagnosis of his

26  stomach problem and requested monetary compensation.  (Id. at 57.)  In his Director's level of

27  review, plaintiff complained that his dietary needs were still not being met, that he had

28  complained numerous times about the pain he was in because of his diet, and because he needed

1   30 mg of morphine but only received 15 mg of morphine. (Id.) The Director's level of review
2   recognized plaintiff's allegations regarding his dietary needs and pain medication, and responded
3   that plaintiff's health record was reviewed, and it was determined that he had received "medical
4   treatment, pain medication, and specialty consultations to address [his] concerns." (Id. at 62.)

5         Compliance with prison grievance procedures is all that is required by the PLRA to
6   "properly exhaust." Jones, 549 U.S. at 217-18. In California, the regulation requires the
7   prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem
8   and action requested.'" Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code
9   Regs. tit. 15 § 3084.2(a)). Where a prison's grievance procedures do not specify the requisite
10  level of factual specificity required in the grievance, "'a grievance suffices if it alerts the prison
11  to the nature of the wrong for which redress is sought.'" Griffin v. Arpaio, 557 F.3d 1117, 1120
12  (9th Cir. 2009) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). The grievance
13  need not include legal terminology or legal theories unless they are needed to provide notice of
14  the harm being grieved. Id. Nor must a grievance include every fact necessary to prove each
15  element of an eventual legal claim. Id. The purpose of a grievance is to alert the prison to a
16  problem and facilitate its resolution, not to lay groundwork for litigation. Id. The grievance
17  should include sufficient information "to allow prison officials to take appropriate responsive
18  measures." Id. (citation and internal quotation omitted).

19        Here, the plaintiff's administrative appeal complained that his medical needs were not
20  being met. Liberally construed, the appeal alerted prison officials to take appropriate responsive
21  measures to resolve plaintiff's complaint that his stomach issues had been misdiagnosed for
22  years, that his treatment was improperly delayed, that his pain medication had been decreased or
23  denied, and that his dietary needs were not being met. See Griffin, 557 F.3d at 1120. Plaintiff
24  complied with the grievance procedures, and has properly exhausted. Jones, 549 U.S. at 217-18.

25        Defendants further argue that plaintiff did not exhaust his administrative remedies against
26  Dr. Bright for the cancellation of pain medication, or against Dr. Sepulveda for the denial of a
27  kosher diet. (Mot at 11.) However, here, the inmate appeal form does not require plaintiff to
28  identify the wrongdoers, and thus, he does not need to name them in the form in order to exhaust

1   his claim. <u>See</u> <u>Jones</u>, 549 U.S. at 218 (holding that because the Michigan Department of

2   Corrections' procedures make no mention of naming particular officials, the Sixth Circuit's rule

3   imposing such a prerequisite to proper exhaustion is unwarranted); <u>Butler v. Rianda</u>, 397 F.3d

4   1181, 1183 (9th Cir. 2005) (California prisoner exhausted administrative remedies by filling out

5   ADA accommodation form even though he did not identify the wrongdoers on the form because

6   the form asked him to "describe the problem" and declare "what specific modification or

7   accommodation is requested" but did not require him to identify any specific persons). In such

8   cases, the inmate has provided the information requested on the form provided, and has availed

9   himself of the administrative process the state made available to him; that is all that the PLRA

10  requires of him. <u>See</u> <u>id.</u>

11      Accordingly, defendants' motion to dismiss for failure to exhaust is DENIED.

12  B.      Motion to Dismiss Based on Official Capacity

13      To the extent plaintiff is suing Dr. Sepulveda in his official capacity, the claims for

14  damages against him are barred by the Eleventh Amendment. <u>See</u> <u>Kentucky v. Graham</u>, 473

15  U.S. 159, 169-70 (1985) (Eleventh Amendment bar on damages in federal court action against

16  state remains in effect when state officials are sued for damages in their official capacity).

17  However, the Eleventh Amendment does not bar suits that seek to impose individual liability

18  upon a government official for actions taken under color of state law. <u>Hafer v. Melo</u>, 502 U.S.

19  25, 31 (1991). Defendants' motion to dismiss claims against Dr. Sepulveda in his official

20  capacity is GRANTED.

21  C.      Motion for Summary Judgment

22          1.      Standard of Review

23      Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

24  that there is "no genuine issue as to any material fact and that the moving party is entitled to

25  judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect

26  the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute

27  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

28  verdict for the nonmoving party. <u>Id.</u>

1        The party moving for summary judgment bears the initial burden of identifying those
2    portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
3    issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving
4    party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no
5    reasonable trier of fact could find other than for the moving party. But on an issue for which the
6    opposing party will have the burden of proof at trial, as is the case here, the moving party need
7    only point out "that there is an absence of evidence to support the nonmoving party's case." Id.
8    at 325.

9        Once the moving party meets its initial burden, the nonmoving party must go beyond the
10    pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
11    genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over
12    material facts and "factual disputes that are irrelevant or unnecessary will not be counted."
13    Liberty Lobby, Inc., 477 U.S. at 248 (1986). It is not the task of the court to scour the record in
14    search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).
15    The nonmoving party has the burden of identifying, with reasonable particularity, the evidence
16    that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the
17    moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

18        At the summary judgment stage, the court must view the evidence in the light most
19    favorable to the nonmoving party: if evidence produced by the moving party conflicts with
20    evidence produced by the nonmoving party, the judge must assume the truth of the evidence set
21    forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152,
22    1158 (9th Cir. 1999).

23        2.    Evidence considered

24        A district court may only consider admissible evidence in ruling on a motion for
25    summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th
26    Cir. 2002). In support of defendants' motion for summary judgment, defendants have properly
27    submitted several declarations and supporting exhibits.

28        Plaintiff has filed an opposition with supporting exhibits, and a supplemental opposition

1    with a supporting exhibit. However, plaintiff has not submitted any declarations. Plaintiff's

2    verified complaint may be used as an opposing affidavit under Rule 56, if it is based on personal

3    knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55

4    F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing

5    affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff

6    stated under penalty of perjury that contents were true and correct, and allegations were not

7    based purely on his belief but on his personal knowledge). However, plaintiff did not verify his

8    opposition or his supplemental opposition in conformity with 28 U.S.C. § 1746. Thus, the court

9    cannot consider plaintiff's factual statements in his opposition or supplemental opposition, as

10   evidence in support of his opposition.[2] See id.

11       3.    Law

12       A determination of "deliberate indifference to serious medical needs" involves an

13   examination of two elements: the seriousness of the prisoner's medical need and the nature of the

14   defendants' response to that need. See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

15   overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.

16   1997) (en banc). A prison official is deliberately indifferent if he knows that a prisoner faces a

17   substantial risk of serious harm and disregards that risk by failing to take reasonable steps to

18   abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be

19   aware of facts from which the inference could be drawn that a substantial risk of serious harm

20   exists," but he "must also draw the inference." Id. If a prison official should have been aware of

21   the risk, but was not, then the official has not violated the Eighth Amendment, no matter how

22   severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

23       3.    Plaintiff's claims

24           A.    Failure to treat

25       Plaintiff claims that Nurse Practitioner Rodriguez should have known that some

26   incoming inmates would have serious medical needs. (Opp. at 12.) He argues that Rodriguez, as

27   _____

28       [2] However, even if the excluded pleadings are considered, summary judgment for
     defendants is still justified.

1  a nurse practitioner, was not qualified to make doctor treatment decisions. (Id. at 12.) He

2  alleges that she made medical decisions that caused him to lose half of his stomach. (Compl. at

3  2.) Plaintiff's main concern regarding Rodriguez appears to be that she was not a licensed

4  medical doctor, and thus, was "inadequately trained" to treat plaintiff's medical condition. (Opp.

5  at 11-12.)

6       These allegations are insufficient to sustain a claim of deliberate indifference. The

7  undisputed facts show that plaintiff was housed at Pleasant Valley State Prison in October 2005.

8  (Opp. at 10.) On October 26 and October 31, 2005, Dr. Kushner indicated to him that

9  medication was needed due to the presence of H. Pylori infection. (Id., Ex. I.) In May 2006,

10  plaintiff was transferred from Pleasant Valley State Prison to Salinas Valley State Prison

11  ("SVSP"). (Opp. at 10.)

12       On May 23, 2006, plaintiff complained of stomach and gastric pains. (Id. at 12 and Ex.

13  M.) Rodriguez saw plaintiff on July 28, 2006 and conducted a "new arrival examination"

14  because it was the first time she examined him. (Decl. Rodriguez at ¶ 3.) At that appointment,

15  plaintiff complained of back pain and denied any loss of bowel or urinary function. (Id. and Ex.

16  A.) Plaintiff did not mention that he had been previously diagnosed with H. Pylori infection, and

17  Rodriguez was also unaware of the previous diagnosis. (Id.) Plaintiff claims that Rodriguez

18  never checked his medical history to verify how long he had been exposed to H. Pylori, nor did

19  she check for ulcers. (Opp. at 11.) Plaintiff also claims that Rodriguez said it was plaintiff's

20  fault for not disclosing to her that he had H. Pylori. (Id. at 10-11.)

21       Rodriguez next saw plaintiff on April 4, 2007 because he was complaining that he had

22  pain while urinating, and that there was blood in his urine. (Decl. Rodriguez at ¶ 4.) Rodriguez

23  ordered a urinalysis. (Id.) Then, Rodriguez treated plaintiff for stomach complaints on

24  November 7, 2007. (Id. at ¶ 5.) That day, plaintiff complained of vomiting and said he had

25  experienced this pain for a few months. (Id.) Rodriguez noted that there was a possibility of H.

26  Pylori infection so she prescribed Pepto Bismol and ordered lab work to test for H. Pylori. (Id.)

27  The test came back positive on November 13, 2007. (Id. at ¶ 6.) Rodriguez next saw plaintiff on

28  December 6, 2007 when he complained again of stomach pain. (Id. at ¶ 7.) Rodriguez

1   prescribed antibiotics and Prilosec. (Id.) The antibiotics are customarily prescribed for H. Pylori

2   treatment. (Id.)

3       Even assuming plaintiff had a serious medical need, he fails to demonstrate that there is a

4   material issue of disputed fact as to whether Rodriguez exhibited deliberate indifference. In his

5   opposition, plaintiff concedes that Rodriguez did not know he had a serious medical condition.

6   Plaintiff's complaint contradicts his own statements. There, he alleges that Rodriguez "was

7   aware of [his] medical condition," and "was aware of the length of time that [he] had been

8   infected." (Compl. at 2.) However, he does not support these self-serving and conclusory

9   statements with any evidence. Thus, they are insufficient to establish a genuine issue of material

10  fact. See Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001); see also Thornton

11  v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory

12  statement of bias to sufficient to carry nonmoving party's burden). The law is clear that even if

13  Rodriguez should have been aware of the risk, but was not, she has not violated the Eighth

14  Amendment. See Gibson, 290 F.3d at 1188.

15      Moreover, the evidence is undisputed that Rodriguez first treated plaintiff on July 28,

16  2006. (Decl. Rodriguez at ¶ 3.) Plaintiff does not dispute that, at that appointment, he denied

17  having bowel or urinary issues. (Id. and Ex. A.) In fact, plaintiff only complained about back

18  pain. (Id.) When Rodriguez saw plaintiff next in April 2007, she ordered a urinalysis after he

19  complained that he had pain when urinating. (Id. at ¶ 4.) Then, when plaintiff saw Rodriguez

20  again in November 7, 2007, he complained that he had experienced pain in his stomach and

21  vomiting for a few months. (Id.) She ordered a test for H. Pylori infection, which came back

22  positive, so she treated his infection. (Id. at ¶¶ 5-7.) There is an absence of evidence that

23  Rodriguez displayed any indifference toward his medical needs.

24      Viewing the facts in the light most favorable to plaintiff, at most, Rodriguez's failure to

25  discover that plaintiff had been previously diagnosed with H. Pylori infection was negligent.

26  However, a claim of medical malpractice or negligence is insufficient to make out a violation of

27  the Eighth Amendment. See Toguchi v. Chung, 391 F.3d 1051, 1060-61 (9th Cir. 2004);

28  McGuckin, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition,

1  without more, does not violate a prisoner's 8th Amendment rights).

2      Accordingly, defendants' motion to for summary judgment is granted as to this claim.

3          B.      Refusal to approve surgery

4      Plaintiff claims that on May 7, 2009, he was told by a doctor from Natividad Medical

5  Center that he needed immediate surgery because he had a cancerous tumor. (Compl. at 4.)

6  Plaintiff alleges that, despite this recommendation, CMO Dr. Sepulveda refused to approve him

7  for surgery until June 2009. (Id.) He did not receive his surgery until June 23, 2009. (Id.)

8      Defendants allege that Dr. Sepulveda was not the CMO at SVSP until October 2009 –

9  months after plaintiff had already received surgery. (Mot., at 5, 16-17.) However, because

10  defendants provide no evidence to support this assertion, it is inadmissible. See Flaherty v.

11  Warehousemen, Garage & Service Station Employees' Local Union No. 334, 574 F.2d 484, 486

12  n.2 (9th Cir. 1978) ("Legal memoranda and oral argument, in the summary-judgment context,

13  are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion

14  for summary judgment").

15      Nonetheless, in order for deliberate indifference to be established, there must be a

16  purposeful act or failure to act on the part of the defendant, and resulting harm. See McGuckin,

17  974 F.2d at 1060. Mere delay of surgery, without more, is insufficient to state a claim of

18  deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404,

19  407 (9th Cir. 1985). Plaintiff cannot succeed on a claim of deliberate medical indifference

20  unless the denial was harmful. See id.

21      Here, even assuming that Dr. Sepulveda refused to approve plaintiff for surgery, there is

22  an absence of evidence that a six week delay – from the date plaintiff was told he needed surgery

23  to the date he received surgery – resulted in harm. Accordingly, defendants' motion for

24  summary judgment is granted as to this claim.

25          C.   Denial of Kosher Diet

26      Plaintiff claims that Drs. Sepulveda and Bright denied three recommendations for a

27  kosher diet made by Drs. Danial and Raghuveer Vanguru, and dietician C. Watson. (Compl. at

28  5.) Plaintiff alleges that, as a result of the diet that he was on, his stomach was in extreme pain

1   and he was at risk of ulcers eating away at his stomach lining. (<u>Id.</u> at 5.)  According to plaintiff,

2   Dr. Danial told him that unless he was dying, the CMO would not change his diet or send him to

3   an institution that had special dietary needs. (<u>Id.</u> at 5.)  Plaintiff states that Drs. Bright and

4   Sepulveda knew that he was vomiting and experiencing stomach pains and, even after repeatedly

5   requesting a change in diet, Drs. Bright and Sepulveda did nothing. (Opp. at 7i.)

6          The undisputed facts demonstrate that Watson, a registered dietician, first treated plaintiff

7   on June 17, 2009. (Decl. Watson at ¶ 3.)  Plaintiff was complaining of a loss of appetite and

8   requested supplements to his diet to allow him to maintain his weight and muscle. (<u>Id.</u>)  Watson

9   examined plaintiff, determined that he was at a healthy weight, and that supplements were not

10  medically indicated. (<u>Id.</u>)  Watson thus denied his request. (<u>Id.</u>)  On July 21, 2009, Dr. Vanguru

11  recommended that plaintiff maintain a non-spicy, non-greasy diet. (Decl. Alvarez, Ex. H.)

12          Watson saw plaintiff again on October 16, 2009. (<u>Id.</u> at ¶ 4.)  At that time, plaintiff was

13  complaining about gas, which plaintiff believed was caused by acidic food in his diet. (<u>Id.</u>)  He

14  requested protein supplements and a kosher diet. (<u>Id.</u>)  Plaintiff asked Watson for a kosher diet,

15  but Watson told plaintiff that only the Jewish Chaplain could approve a request for a kosher diet.

16  (<u>Id.</u>)  Moreover, kosher diets are only available to Jewish inmates. <u>See</u> 15 C.C.R. § 3054.2.

17  Ultimately, the Jewish Chaplain refused plaintiff's request. (Decl. Alvarez, Ex. Q.)

18          Watson also recommended a Prilosec prescription, and spoke with plaintiff about what

19  foods he should avoid to minimize stomach pain. (Decl. Watson at ¶ 4.)  Watson concluded that

20  plaintiff had a healthy weight, good nutrition, and had normal protein levels. (<u>Id.</u>)  Watson states

21  that he would not recommend, and did not recommend, a kosher diet to inmates with plaintiff's

22  medical condition because a kosher diet merely refers to foods that are prepared in a different

23  manner, and is not necessarily less "spicy" than the regular inmate food. (<u>Id.</u> at ¶¶ 6, 8.)  In

24  plaintiff's case, Watson recommended continuing on the regular inmate diet, taking care to be

25  aware of which foods he should avoid in order to decrease his gastric reflux problems. (<u>Id.</u> at

26  ¶ 6.)

27          Because the defendants have met their initial burden of demonstrating an absence of a

28  genuine issue of material fact, <u>see</u> <u>Celotex Corp.</u>, 477 U.S. at 323, plaintiff must go beyond the

1   pleadings and "set forth specific facts showing that there is a genuine issue for trial." Fed. R.

2   Civ. P. 56(e). This court is not allowed to assume that challenged factual allegations in

3   plaintiff's complaint are true, irrespective of any evidentiary support. See Butler v. San Diego

4   District Attorney's Office, 370 F.3d 956, 964 (9th Cir. 2004).

5           Plaintiff has not submitted any evidence that Dr. Danial, Dr. Vanguru, or Watson

6   recommended that he change to a kosher diet, or that plaintiff needed a kosher diet. Indeed, the

7   court cannot consider factual allegations in any of plaintiff's pleadings as declarations or

8   evidence because plaintiff has failed to verify his pleadings. Cf. Schroeder, 55 F.3d at 460 &

9   nn.10-11.

10          Moreover, even assuming that Dr. Danial, Dr. Vanguru, or Watson recommended that

11  plaintiff receive a kosher diet, there is no evidence that Dr. Bright or Dr. Sepulveda knew that

12  there would be a substantial risk of serious harm if plaintiff did not receive that diet. See

13  Farmer, 511 U.S. at 837. Finally, plaintiff fails to demonstrate that the denial of the kosher diet

14  was medically unacceptable under the circumstances, and that the treatment plaintiff received

15  was chosen in conscious disregard of an excessive risk to his health. See Toguchi, 391 F.3d at

16  1058. In the opinion of Watson and Dr. Vanguru, in order to minimize the gas in plaintiff's

17  stomach, he was to avoid non-greasy, non-spicy foods. (Decl. Watson at ¶ 4, Ex. B; Decl.

18  Alvarez, Ex. H.) Plaintiff's opinion that he needed a kosher diet for medical reasons does not

19  amount to a constitutional violation. Estelle, 429 U.S. at 107.

20          Based on the absence of evidence, defendants are entitled to summary judgment on this

21  claim.

22              D.      Cancellation of morphine

23          Plaintiff claims that Dr. Bright cancelled an order for a prescription of morphine, which

24

25

26

27

28

1   plaintiff needed in order to treat his pain.[3] (Compl. at 5.) Plaintiff asserts that Dr. Bright did not

2   understand how much pain plaintiff suffered without the morphine. (Id. at 6.)

3           The undisputed facts show that, on October 28, 2009, plaintiff requested an increase in

4   his morphine to relieve his stomach pain due to acid reflux. (Decl. Alvarez, Ex. I.) On

5   November 7, 2009, Nurse Burns delivered plaintiff's morphine to him and then asked that he

6   open his mouth to show that he was not "cheeking" the medication. (Id., Ex J.) Plaintiff refused

7   and became aggressive. (Id.) Nurse Burns referred the matter to plaintiff's doctor to determine

8   whether a change in medication was warranted. (Id.) Nurse Burns observed that, because

9   morphine can cause adverse side effects if abused, plaintiff was at risk of a potential overdose.

10  (Id.)

11          On March 13, 2010, Nurse Miller treated plaintiff after he complained of vomiting and

12  stomach pain, and he requested morphine. (Id., Ex. M.) Nurse Miller noted that Dr. Danial had

13

------

14      [3] The court notes that plaintiff's opposition and supplemental oppositions raise claims
15  outside the scope of his complaint. For example, he attempts to transform his claims against Dr.
    Bright from one instance of canceling his morphine prescription, to a claim that he denied
16  plaintiff pain medication over the course of years. Plaintiff also attempts to add a claim that Dr.
    Sepulveda also denied him pain medication over the course of years.
17      Plaintiff is advised that an opposition to a motion for summary judgment is not a proper
18  vehicle for adding new claims to his complaint. See Wasco Products, Inc. v. Southwall
    Technologies, Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("[T]he necessary factual averments are
19  required with respect to each material element of the underlying legal theory. . . . Simply put,
    summary judgment is not a procedural second chance to flesh out inadequate pleadings.").
20      To the extent plaintiff's pleadings argue matters outside the scope of his complaint, those
21  arguments and supporting facts will not be considered. Adding new claims will not be allowed
    where it would cause the opposing party undue prejudice. See Janicki Logging Co. v. Mateer,
22  42 F.3d 561, 566 (9th Cir. 1994) (attempt to amend complaint requiring amendment of
    scheduling order under Fed. R. Civ. P. 16 must be based upon good cause). This is especially
23  true where, as here, the plaintiff has previously filed an amended complaint. See Wagh v. Metris
24  Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003). Adding new claims at this late stage, after the
    case has been pending for over one year, and after dispositive motions have been filed and
25  briefed, would be unduly burdensome and prejudicial to the defendants, and will not be allowed.
    See Brass v. County of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003) (upholding district
26  court's finding that plaintiff waived new § 1983 arguments raised for the first time in his motion
27  for summary judgment where nothing in the counts in the amended complaint suggested he was
    raising those arguments and he offered no excuse or justification for his failure to raise them
28  earlier).

1  discontinued the morphine because of plaintiff's "abusive behavior." (Id.) On March 26, 2010,

2  plaintiff against requested morphine and Nurse Miller reported that his morphine had been

3  discontinued due to "cheeking" the medication. (Id., Ex. N.)

4      On April 23, 2010, Dr. Masamoto treated plaintiff for abdominal pain. (Id., Ex. O.)

5  Plaintiff requested morphine, but Dr. Masamoto did not think morphine was the appropriate

6  treatment and prescribed dicyclomine instead. (Id.)

7      On May 3, 2010, after plaintiff requested that his morphine prescription be refilled

8  because Dr. Danial "took away [his] pain medication," Nurse Miller noted plaintiff was very

9  agitated regarding the discontinuation of his morphine and scheduled him to see Dr. Danial on

10 May 11, 2010. (Id., Ex. P.) On May 27, 2010, Dr. Bright noted that the Pain Management

11 Committee reviewed plaintiff's case and discontinued the morphine prescription because

12 plaintiff had refused to cooperate with his treaters. (Id., Ex. R.)

13     On June 7, 2010, Dr. Barbara Bordler examined plaintiff. (Id., Ex. S.) In response to

14 plaintiff's request for morphine, she offered Tylenol. (Id.) Plaintiff refused the Tylenol and

15 stated that only narcotics eased the pain. (Id.) On November 15, 2010, Dr. Pajong examined

16 plaintiff. (Id., Ex. T.) Plaintiff again requested narcotics, and Dr. Pajong denied the request,

17 stating that narcotics were not medically indicated. (Id.)

18     Defendants submit evidence that Dr. Bright's only involvement in the discontinuation of

19 plaintiff's prescription was on May 27, 2010, when he wrote "The new pain management

20 program states that prescribing narcotics is an absolute contraindication in Inmate-Patients who

21 divert them or are unwilling to comply with treatment and directions to take medications.

22 Therefore your narcotics will be discontinued." (Id., Ex. R.)

23     Viewing the facts in the light most favorable to plaintiff, the court concludes that he has

24 not shown evidence that precludes summary judgment. More specifically, plaintiff has provided

25 evidence that he was denied morphine, not that he was deprived of other medications prescribed.

26 Defendants have presented evidence that plaintiff received medical treatment for his condition

27 during the time at issue in his complaint. Plaintiff may not have received the medical treatment

28 he desired but he did receive medical care, which, under the facts presented, was not

1   constitutionally inadequate. Indeed, the record presents undisputed facts that plaintiff was

2   regularly examined over the time at issue in the complaint. In light of the "cheeking" incident,

3   because morphine is a controlled substance that can cause death if abused, plaintiff was offered

4   at least one alternative to morphine, one of which he rejected. Though, plaintiff would have

5   preferred morphine, a difference of medical opinion is not sufficient by itself to make out a

6   violation of the Eighth Amendment.

7        Furthermore, plaintiff has not shown that the treatment chosen by the medical staff was

8   "medically unacceptable under the circumstances" and that they chose this course in "conscious

9   disregard of an excessive risk to plaintiff's health." On the other hand, defendants have

10  presented evidence that the decisions regarding the discontinuation of morphine were made after

11  examinations of plaintiff and a study of his medical history. Plaintiff has not presented sufficient

12  countering evidence. Based on this record, the court finds that plaintiff has not presented

13  evidence that precludes summary judgment.

14       Accordingly, the court will grant defendants' motion for summary judgment as to this

15  claim.[4]

16                              **CONCLUSION**

17       Defendants' motion to dismiss is DENIED. Defendants' motion to dismiss claims

18  against Dr. Sepulveda in his official capacity is GRANTED. Defendants' motion for summary

19  judgment is GRANTED. Judgment shall be entered in favor of defendants. The clerk shall

20  terminate all pending motions and close the file.

21       IT IS SO ORDERED.

22  DATED:  4/10/12                         *Ronald m. whyte*

23                                          RONALD M. WHYTE
                                            United States District Judge

24

25

26

27
_____

28       [4] Because the court grants defendants' motion for summary judgment, it is unnecessary
    to address their argument for qualified immunity.

Order Denying Defendants' Motion to Dismiss; Granting Defendants' Motion for Summary Judgment
P:\pro-se\sj.rmw\cr.10\Williams715mtdmsj          15